JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE MERIDIAN HEALTH CARE MANAGEMENT, INC.<br><br>NORTHRIDGE MEDICAL GROUP, INC. ET AL.<br><br>Appellants,<br><br>vs.<br><br>NAUTIC PARTNERS, LLC ET AL.<br><br>Appellees. | CASE NO. CV 10-3874-JST<br><br>**ORDER AFFIRMING BANKRUPTCY COURT JUDGMENT** |

## I. INTRODUCTION

Appellants Northridge Medical Group, Inc. and Family/Seniors Medical Group, Inc. (collectively "Medical Parties") appeal the Bankruptcy Court's March 12, 2010 order in adversary case no. 1:07-ap-1186-GM granting summary judgment to Appellees' Nautic Partners, LLC, Chisholm Partners IV, L.P., Fleet Equity Partners VI, L.P., Fleet Venture Resources, Inc., Kennedy Plaza Partners, II, LLC, and Scott Hilinski, a Managing Director of Nautic Partners (collectively "Nautic Parties") and certifying the judgment for appeal. Specifically, Medical Parties assert that the Bankruptcy Court erroneously excluded from evidence certain statements on hearsay grounds. For the reasons stated below, the Court AFFIRMS the judgment of the Bankruptcy Court.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This appeal stems from the Bankruptcy Court's orders in the main bankruptcy case, *In re Meridian Health Care Management, Inc.*, No. 1:06-bk-10733-Gm, and in the adversary case, *David R. Hagen v. Michael Alper et al.*, No. 1:07-ap-01186-GM. Because Medical Parties' appeal concerns only a relatively discrete evidentiary issue, the Court includes only facts pertinent to that issue.

Nautic Partners performed operational and administrative functions on behalf of a group of equity investment funds, Chisholm Partners IV, L.P., Fleet Equity Partners VI, L.P., Fleet Venture Resources, Inc., Kennedy Plaza Partners, II, LLC ("the Funds").[1] Hilinski is a Managing Director of Nautic Partners. In 1999, the Funds obtained a 50% interest in Meridian Health Care Management, Inc. ("Meridian"). Hilinski was a member of Board of Directors for Meridian and served as an outside director as the designee of

---

[1] The following facts are taken from the undisputed facts of the Bankruptcy Court's March 12, 2010 Memorandum of Opinion granting Nautic Parties summary judgment. (R. 2439-40.) Neither Appellants nor Appellees dispute these facts in their briefs.

2

1  Chisholm Partners.  Michael Alper, Meridian's Chief Executive Officer, and Brian Sato, Meridian's Chief Financial Officer, ran the day-to-day operations at Meridian and were the primary source of Hilinski's knowledge of the ongoing operations at Meridian.

In July 1999 and November 2000, Meridian entered into Management Service Agreements (MSAs) with the Medical Parties.  The MSAs granted check-writing authority to Meridian's management, including Alper and Sato.

In June 2003, Meridian lost PacifiCare, one of its largest customers, and, by June 2004, faced severe financial problems.  In June 2004, the Funds entered into a forbearance agreement on the Funds' debt with Meridian, and redeemed the Funds' stock in Meridian. In August 2005, e4e, Inc. ("e4e") acquired Meridian.  Alper and Sato continued to be employed by Meridian after e4e's acquisition.

In 2005, Alper informed Hilinski that he had engaged in a misappropriation scheme on Meridian's behalf, in which he borrowed money from Meridian's customers without the customers' knowledge.  (R. at 810-811.)  Hilinski informed Meridian and e4e, (R. at 810-811,) which prompted e4e to engage Navigant Consulting, Inc., a forensic accounting firm, to investigate the alleged misappropriation scheme.  (R. at 1368.)  Pursuant to that investigation, Peter Salomon, Director of Navigant's Litigation and Investigation Services practice, interviewed Alper and Sato on December 14, 2005.  (R. at 1504-1505.)  During this interview, Alper and Sato discussed a 2003 conference call between Alper, Sato, and Hilinski.  Alper's and Sato's statements to Salomon regarding that 2003 conference call form the subject of this appeal.

On May 16, 2006, Meridian filed a voluntary petition for Chapter 7 bankruptcy, and David R. Hagen, acting as duly-appointed Trustee and plaintiff, filed a Complaint against Medical Parties, Nautic Parties, e4e, Alper, and Sato alleging numerous claims of fraud, breach of fiduciary duty, and negligence.  (R. at 2.)  Medical Parties filed an Answer (R. at 26) and counterclaims against Meridian and cross-claims against Nautic Parties, e4e, Alper, and Sato alleging intentional misrepresentation, fraud, negligent misrepresentation, and conspiracy to commit fraud against all parties.  (R. at 33-45.)  Medical Parties also

alleged conversion against the Nautic Parties, e4e, Alper, and Sato; intentional interference with contractual relationship against Nautic Parties; and breach of contract against Meridian.  (R. at 45-47.)

Following years of litigation, Nautic Parties moved for summary judgment against the Trustee seeking to exclude Alper's and Sato's interview statements based on their assertion of their privilege against self-incrimination.  The Bankruptcy Court granted these motions on January 7, 2009.  (R. at 270-75.)

On May 22, 2009, Medical Parties moved for summary judgment against Nautic Parties.  (R. 405-435.)  On June 30, 2009, Medical Parties deposed Salomon; in his deposition, Salomon described Alper's and Sato's statements.  (R. at 1356-1581.)  On July 17, 2009, Nautic Parties filed a motion in limine to exclude all references to Alper's and Sato's statements.  (R. at 1963-1984.)  On November 19, 2009, the Bankruptcy Court granted the motion in limine to exclude all references to Alper's and Sato's statements.  (R. at 2362 – 2390.)  On December 22, 2009, the Court entered an order granting summary judgment in favor of the Nautic Parties, (R. at 2434 -2445,) and entered an amended order and a final judgment granting summary judgment on March 12, 2010.  (R. at 2502.)

On May 13, 2010, Medical Parties filed their Joint Notice of Appeal and election to have this appeal heard in the district court.  (R. at 2579-2604.)  Medical Parties argue that the Bankruptcy Court committed reversible error in excluding Alper's and Sato's statements.  (Appellant Br. at 22-23.)

**III.   LEGAL STANDARD**

The Court has jurisdiction over appeals from final orders and judgments of a bankruptcy court under 28 U.S.C. § 158(a)(1).  When considering an appeal from the bankruptcy court, a district court uses the same standard of review that a circuit would use in reviewing a decision of a district court.  *See In re Barof*, 105 F.3d 439, 441 (9th Cir. 1997).  Therefore, the Court reviews de novo the Bankruptcy Court's conclusions of law,

and reviews for clear error the Bankruptcy Court's findings of fact. *In re Int'l Fibercom, Inc.*, 503 F.3d 933, 940 (9th Cir. 2007).

A grant of summary judgment is reviewed de novo. *United States v. City of Tacoma*, 332 F.3d 574, 578 (9th Cir. 2003). Evidentiary determinations in the context of a summary judgment, however, are reviewed for abuse of discretion. *Wong v. Regents of Univ. of Ca.*, 410 F.3d 1052, 1060 (9th Cir. 2005). Whether the Bankruptcy Court abused its discretion is measured by a two-step objective test. *Hinkson v. United States*, 585 F.3d 1247, 1261-62. The first step is to determine de novo whether the Bankruptcy Court identified the correct legal rule to apply to the relief requested. *Id.* The second step is to determine whether the bankruptcy court's application of the correct legal standard was (1) "illogical," (2) "implausible," or (3) without "support in inferences that may be drawn from the facts in the record." *Id.* at 1262.

**IV.     DISCUSSION**

Appellants do not dispute that the Bankruptcy Court's in limine opinion identified the correct legal rule. Thus, the only issue the Court must address is whether the Bankruptcy Court abused its discretion, i.e. committed clear error, in determining that Alper's and Sato's statements were inadmissible hearsay.[2]

Specifically, appellants argue that the Bankruptcy Court misapplied *Williamson v. United States*, 512 U.S. 594 (1994), and committed clear error in not finding that Alper's and Sato's statements were self-inculpatory and therefore admissible as statements against interests under FRE 804(b)(3). (Appellants Br. at 28.) The Court disagrees.

---

[2] Appellants also argue that the Bankruptcy Court committed clear error in "disregarding" Salomon's deposition testimony concerning Alper's and Sato's statements. (Appellant Br. at 24-28.) Because the Court determines that the Bankruptcy Court did not err in excluding Alper's and Sato's statements, the admissibility of Salomon's testimony as to those statements is irrelevant.

A. <u>Alper's and Sato's Statements</u>

In ruling on the motion in limine, the Bankruptcy Court considered Alper's and Sato's statements as presented in Salomon's Deposition. (R. at 2375-2376.) The Court now considers those statements as the Bankruptcy Court did.

As the Bankruptcy Court outlined, Salomon testified that Alper stated:

> Sometime in late 2003, Alper and Brian Sato had a telephone conversation with [Hilinski] . . . regarding Meridian's immediate cash needs . . . Hilinski declined to make any additional investment in Meridian. Alper said that during the call someone suggested that Meridian could meet its cash needs by billing customers for management fees in advance. Alper said that Hilinski remained silent and did not object to this method of obtaining the needed cash.

(R. at 2375.) Salomon testified that Sato stated:

> In October 2003, I participated in a telephone call between Alper and Hilinski in which we discussed Meridian's financial position and the cash flow shortage that resulted from the loss of PacifiCare and other Meridian customers . . . . The three of us then discussed alternative ways of meeting [Meridian's] immediate cash needs. The idea that we discussed was to take funds from customer accounts over which we had control and which we knew the [sic] there was little risk the customer would find out. We used the term 'advanced management fees' to describe this proposal, but it was understood that Meridian would be taking money from the customer's accounts that it had not earned and to which it was not entitled. This practice was intended to be a short term fix for a few months to cover the negative cash flows until a sale was consummated of [sic] [Meridian] obtained additional customers.

1         During the phone call, Hilinski agreed to the advance management
2         fee proposal.

(R. at 2375.) Salomon also testified that Sato stated: "Although I did not have discussions on the topic directly with Hilinski, I believe based on the following facts and circumstances, that he was aware that Meridian was continuing to pay itself unearned 'advance management fees' from its customer accounts throughout 2004 and 2005." (R. at 2376.)

        B.        <u>The Bankruptcy Court's Analysis of Alper's and Sato's Statements</u>

In its in limine order, the Bankruptcy Court noted that under Federal Rule of Evidence 804(b)(3), a "statement against interest" is defined as a "statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." Fed. R. Evid. 804(b)(3); (*see* R. at 2382-2383.) "Rule 804(b)(3) is founded on the commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true." *Williamson*, 512 U.S. at 599.

In deciding that Alper's and Sato's statements were not admissible statements against interest, the Bankruptcy Court first held that the statement against interest exception covers "only those declarations or remarks within the confession that are individually self-inculpatory." *Williamson*, 512 U.S. at 599; (R. at 2383.) This is a correct application of *Williamson*. Indeed, the Supreme Court in *Williamson* clearly held that statements that are collateral to self-inculpatory statements are "generally excluded" as hearsay. *Williamson*, 512 U.S. at 600.

The Bankruptcy Court then determined that Alper's and Sato's statements were not self-inculpatory and thus were not admissible under Rule 804(b)(3). (R. at 2383.) This required the Bankruptcy Court, as it did, to view the statements "in context" and "in light of all the surrounding circumstances." *Williamson*, 512 U.S. at 604; (R. 2383-2384.)

7

1  Considering the context of the statements, the Bankruptcy Court guided its analysis with
2  two Ninth Circuit cases, *Padilla v. Terhune*, 309 F.3d 614 (9th Cir. 2002), and *United*
3  *States v. Patayan Soriano*, 361 F.3d 494 (9th Cir. 2004), and a Third Circuit case, *United*
4  *States v. Mussare*, 405 F.3d 161 (3d Cir. 2005).

5        The court in *Padilla* held that "when an accomplice makes a statement
6  incriminating [another accomplice] in private, to a friend, without mitigating his own role
7  in the crime, the circumstance surrounding the statement provide a 'particularized
8  guarantee of trustworthiness'. . . ." *Padilla*, 309 F.3d at 619 (citing *United States v. Boone*,
9  229 F.3d 1231, 1234 (9th Cir. 2000)).  The court in *Patayan Soriano* held that when
10 "suspects were simply trying to shift the primary responsibility to others" with their
11 statements, such statements were "self-exculpatory" as opposed to self-inculpatory.
12 *Patayan Soriano*, 361 F.3d at 506.  Finally, the court in *Mussare* held that the "[w]here
13 statements inculpate both the speaker and the defendant challenging their admission, the
14 statements are admissible so long as they were 'self-inculpatory' and not simply self-
15 serving attempts to deflect criminal liability." *Mussare*, 405 F.3d at 168.

16       Juxtaposing Alper's and Sato's statements against the holdings in *Padilla*, *Patayan*
17 *Soria*, and *Mussare*, the Bankruptcy Court determined that "Alper and Sato did not expose
18 themselves to any additional liability by discussing Hilinski's alleged involvement,
19 agreement, or concurrence."  (R. at 2385) (emphasis included.)  The Bankruptcy Court
20 arrived at this conclusion based on the fact that "Alper and Sato did not make the
21 statements . . . in a private setting [or] to . . . friends."  (*Id.*)  On the contrary, the
22 Bankruptcy Court noted that Alper and Sato made these statements while "being
23 investigated by Navigant on behalf of e4e."  (*Id.*)

24       The Bankruptcy Court additionally referenced *Williamson*'s observation that "[a]
25 reasonable person in [the declarant's] position might even think that implicating someone
26 else would decrease his practical exposure to criminal liability," and found that "[a]
27 reasonable person in the position of either Alper or Sato would have reason to shift at least
28 some of the blame to Hilinski . . . if doing so would 'curry favor' with e4e or focus its

attention on the deeper pockets of Hilinski and the Nautic Parties." (R. at 2385.) The Bankruptcy Court found therefore that Alper's and Sato's statements were not statements against interest because they "did not tend to subject Alper and Sato to civil or criminal liability such that a reasonable person in their position would not have made the statements unless believing them to be true." (*Id.* at 21-22.)

In reviewing the Bankruptcy's Court's opinion, the Court determines that Bankruptcy Court did not commit clear error in its application of Rule 804(b)(3) in excluding Alper's and Sato's statements as inadmissible hearsay. Nothing about the Bankruptcy Court's application of Rule 804(3) was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *Hinkson*, 585 F.3d at 1262.

### V.  CONCLUSION

For the reasons stated above, the Court AFFIRMS the Bankruptcy Court's decision to exclude Alper's and Sato's statements in granting summary judgment.

DATED: November 22, 2010

**JOSEPHINE STATON TUCKER**
JOSEPHINE STATON TUCKER
UNITED STATES DISTRICT JUDGE